IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTINE J. DINKEL,

    Plaintiff,

vs.

Case No. 07-1129-JTM

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendants.

MEMORANDUM AND ORDER

    Plaintiff Christine Dinkel has applied for Social Security disability and supplemental security income benefits. Her application was denied by the Administrative Law Judge on October 26, 2006, a decision affirmed by the Appeals Council on March 5, 2007. Dinkel alleges that the ALJ erred in discounting the credibility of her subjective complaints.

    Plaintiff-claimant Dinkel was born in 1966. She has stated that she became disabled beginning March 24, 2003, due to a back condition, specifically her "lower spine is crooked and there are no discs at the bottom of spine and I have no left hip." She has an eighth-grade education, and has worked as a sander, waitress, clothing presser, light production worker, and janitor. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 16-22), and set forth *seriatim* in the argument sections of Dinkel's appeal brief (Dkt. No. 10, 3-11), and the Commissioner's response (Dkt. No. 15, 3-12).

The ALJ concluded that Dinkel had not engaged in substantial gainful activity during the relevant period, and she had severe impairments including degenerative joint disease, obesity, learning disorder, anxiety, and depression (Tr. 21-22). At step three, he found that Plaintiff did not have an impairment that met or equaled one found at in Appendix 1, Subpart P, Regulations No. 4 (Tr. 22).

The ALJ then found that Dinkel's credibility was limited. During the course of her treatment, Dinkel received several MRI examinations. The results of the first, February 2, 2004 MRI were summarized by the ALJ – it

> revealed some degenerative disc disease at L4-5 with a broad based posterior disc bulge with a focal central radial tear and disk protrusion causing some central spinal stenosis within the thecal sac and some neuroforamen narrowing. (Exhibit 5F/15).

(Tr. 17). Another MRI was performed August 15, 2006. It "showed partial sacralization of L5 and degenerative change in the L4-5 disc, but no evidence of disk protrusion, canal stenosis or foraminal narrowing." (Tr. 18).

Two consultative exams of Dinkel were conducted. In the first, on August 23, 2003, the tests results included the observations that Dinkel appeared cooperative, she had zero grip strength, there was "severe pain with limited range of motion" in both the cervical and lumbar spines, and "severe difficulty" in standing up from a seated position. (Tr. 138-140). A second exam, on February 28, 2004, reported that Dinkel's cooperation with exam was "poor" to "moderate," and that although she "complained of back pain in the back and knees with range of motion testing," she "then sat up and her knees flexed to 90 degrees as she sat." (Tr. 174).

The ALJ wrote:

> Regarding her daily activities, the claimant reported that she is able to dust, do the dishes, clean her bathroom, do crafts and spend time on the computer. (Exhibit 5E) The claimant further testified, as noted above, that she rides in a truck with her husband during the summer months, including sitting for up to 2 to 3 hours at a time. The undersigned notes that the claimant also sat comfortably at the hearing for 45 minutes. These factors suggest that the claimant's back pain is not disabling and that she is more physically and mentally capable than alleged. For these reasons, the allegations and testimony by the claimant and her husband regarding symptoms and limitations are not credible.

(Tr. 20, 2nd full ¶).

The ALJ found that Dinkel had the residual functional capacity (RFC) to perform work that required lifting no more than 20 pounds, standing no more than six hours in a day, and sitting no more than six hours in a day (Tr. 22). He found she could not climb ladders, ropes, or scaffolds, but she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl (Tr. 22). She could read or write at about the fifth grade level, and did not have mathematics skills (Tr. 22). She was limited to simple, repetitive, unskilled work with two to three step instructions (Tr. 22). She should have minimal to no interaction with the public and co-workers (Tr. 22).

Based on this RFC, with the help of a vocational expert, the ALJ determined Dinkel could still perform her old job as a light production worker (Tr. 22). Alternatively, the ALJ found that, even if Dinkel could not return to her past work, she could still do other work found in significant numbers in the national economy, such as a bench assembler, stock clerk, small product assembler, sedentary assembler, and electronic assembler (Tr. 22).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show whether she is engaged in

substantial gainful activity, she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act.  Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance.  It is satisfied by evidence that a reasonable mind might expect to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion.  *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Dinkel contends that the ALJ erred in assessing her credibility. Specifically, she contends that the ALJ erred in relying on the results of the second MRI as a basis for discounting her subjective statements, and contends that the ALJ erred in discounting the letter opinion of Dr. Stanley E. Handshy submitted October 11, 2006. In that letter, Dr. Handshy wrote he believed the disk bulge noted in the earlier MRI was still present at the time of the second MRI, it was merely not visible on the film, since "[i]t should be understood from a medical perspective that disk bulges do not just go away on their own." (Tr. 225). Further, she argues that because the first MRI showed some impingement, the ALJ should have considered the possibility of a closed period of benefits in 2004. She contends that the ALJ erred in relying on his own personal observations of her at the hearing, and in not giving greater weight to the original conclusion of Dr. Stanley Mintz that her IQ was 51 (which would meet the listed impairment of 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05).

An ALJ's findings as to credibility should be closely and affirmatively linked to the evidence, rather than merely a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). However, the law does not require a formalistic factor-by-factor recitation of the evidence, so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ must therefore explain, and support with substantial evidence, which portion of a claimant's testimony he did not believe, and the reasons for his disbelief. *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). Using standard boilerplate language which fails to set forth the specific evidence considered is error. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). Nor can the ALJ ignore evidence favorable to plaintiff. *Owen v. Chater*, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

The mere fact that working may cause the claimant pain or discomfort does not mandate a finding of disability. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990). In analyzing subjective complaints of pain, the ALJ must consider (a) whether the claimant established a pain-producing impairment by objective medical evidence, (b) whether there is a "loose nexus" between such a proven impairment and the claimant's subjective allegations of pain; and (c) whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. *See Hintz v. Chater*, 913 F. Supp. 1486, 1493 (D. Kan. 1996) (citing *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992)). *See also Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). The ALJ must consider the levels and effectiveness of medication, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. In addition, there are subjective measures of credibility that are peculiarly within the judgment of the ALJ. *See Hintz*, 913 F. Supp. at 1493, *citing Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991).

The ALJ concluded that Dr. Handshy's opinion had little weight, because "the most recent MRI is most consistent with her daily activities, her exaggerated symptoms on examination by Dr. Wendt and Dr. Mintz, her normal neurological examinations, and other spinal x-rays of record." (Tr. 18).

The ALJ's credibility determination was not error. While he may not have stressed those portions of the record which Dinkel would have preferred, he did review and account for all of the important evidence in the record, and the court will not reweigh the evidence now. The court finds that there is substantial evidence to support the ALJ's credibility determination.

Dr. Handshy never examined Dinkel, and the ALJ was not required to assign significant weight to his opinion. This is especially true in light of other objective medical evidence to support the ALJ's determination. Dr. Mark Wendt, D.O., examined Dinkel in July of 2003, and, after noting that Dinkel carried a letter from an attorney seeking a "disability rating," he refused to give one. (Tr. 155). His examination showed that Dinkel had some weakness, but he believed she was "exaggerating her symptoms." (Id.) After a July, 2004 examination, Wendt reported that Dinkel had indicated that she could not bend over during the exam, but that once the exam was over she easily bent down to pick up her purse. She has falsely stated that she was born without a hip. She indicated in forms that she could sit for no more than five minutes. Her husband testified that she could ride with him in a truck for two or three hours. (Tr. 105, 251).

Dinkel argues that it was improper for the ALJ to rely in part on his personal observations of her apparent lack of difficulty in sitting during the hearing, and cites several cases in support of her argument. In particular, *Turner v. United States Dept. of HHS*, No. 94-6202, 1995 WL 339402 (10th Cir. June 7, 1995); *Teter v. Heckler*, 775 F2d 1104 (10th Cir. 1985); *Kreie v. Bowen*, 656 F.Supp. 765 (D. Kan. 1987). The court finds that these authorities do not support the conclusion that the ALJ's determination in the present case was error.

In *Turner*, the court held that an ALJ had improperly discounted the claimant's subjective statements of pain based on his observation of the claimant at the hearing. But the court did not indicate that such observations may not be taken into account, it held only that, under the facts of the case, the ultimate conclusion of the ALJ was erroneous. Specifically, the court indicated that (1) the only apparent basis for the ALJ's conclusion as to credibility was his personal observation, (2) the medical evidence was otherwise strongly supportive of the claimant's subjective complaints, and (3)

7

the ALJ's personal observations took place during at extremely limited hearing – one which lasted for "only ten minutes". 1995 WL 339402 at *3.

The decision in *Teter* is similar. The court there held simply that a ALJ's adverse credibility determination, which was based on personal observations of demeanor, could not stand where all of "the uncontroverted evidence supported Teter's pain as genuine." *Teter*, 775 F.2d at 1106. Given such consistent evidence, the court held, "the ALJ may not reject Teter's assertions on the basis of demeanor *alone*." (*Id*.) (emphasis added).

Finally, this court in *Kreie* reached a similar conclusion, expressing agreement with the view that personal observations of demeanor are insufficient by themselves to contradict subjective statements of disabling pain, and that "'the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation.'" *Kreie*, 656 F.Supp. at 769 (*quoting Weaver v. Secretary of Health and Human Services*, 722 F.2d 310, 312 (6th Cir.1983)) (emphasis in *Weaver*). The *Kreie* court in fact acknowledged that personal observations of demeanor "constitute relevant, material and admissible evidence" for assessing a claimant's credibility. *Id.* at 769.

The ALJ's credibility determination here is not error, since it rests on more than his personal assessment of Dinkel's demeanor at the hearing. It also incorporates inconsistencies in Dinkel's own statements, objective medical test results, and the observations of examining physicians that Dinkel appeared to exaggerating her symptoms. Taking the record as a whole, the court finds that the ALJ's credibility determination was not in error. Having determined that Dinkel's subjective statements were not credible, there was no basis for finding she was disabled for any period of time.

Nor does the court find error in the ALJ's decision that Dinkel did not meet the listed impairment for low IQ. The finding of an IQ of 51 would, of course, have automatically led to a

disability finding under standard of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B, if the IQ finding were valid. But an ALJ is not automatically compelled to accept as valid any IQ test result submitted on behalf of a claimant. *McKown v. Shalala*, No. 93-7000, 1993 WL 335788 at *3 (10th Cir. Aug. 26, 1993). Here, Dr. Mintz himself concluded that the IQ result was not valid, based in part on a suspicion of malingering. (Tr. 185-86).

Dinkel suggests that Dr. Mintz's original test was valid, and his will was somehow overborne by the negative suggestions of George Stern, Ph.D. There is no evidence to support this speculation. More importantly, the court's goal is to determine whether the ALJ's decision is supported by substantial evidence, and under the circumstances it could hardly be erroneous for the ALJ to note that the Dr. Mintz himself concluded that the IQ score was not valid.

The court finds that the ALJ's determinations herein are supported by substantial evidence, and no error has been shown.

IT IS ACCORDINGLY ORDERED this 17th day of September, 2008, that the present appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE